We'll call our next case, 24-3186, United States v. Morgan. Go ahead, counsel. Judge Carson, may it please the court, my name is Dan Hansmeier. I'm with the Kansas Federal Defender's Office, and I'm here on behalf of the appellant, Brett Morgan. This is yet another trial appeal on the docket today. There are a lot of issues, sorry about that. There are a lot of issues because we think a lot of things went wrong. To be honest with you, I basically need to run the tables on this appeal for it to do anything for Morgan. He's got eight years in prison, and if we don't win everything, he's probably going to die there. So I don't really have a strategy for picking out issues. They're all important. I would love to talk about all of them. Obviously, I'm not going to be able to do that in 12 minutes, so if anybody has anything in particular they want to talk about, I'm all for it. Could we talk about the evidentiary rulings first, if that's okay with my colleagues here? Sure. You had a question, or you just want me to? Just give me your pitch, and I'll probably have some questions. So the Rule 807, just go through all of them? Let's talk about your 403 argument first. Oh, the Castillo argument I'm asking for? Yeah. I'll just go ahead and throw out my question. So my question is, you know, there's an argument as to the 807 argument that it would be harmless, that it was harmless. So if the district court didn't, you know, give a great reasoning on the 403 ruling, or even if it was just really perfunctory, is that subject to harmless air review? So I'm not sure how to answer that. Our basic submission on the Rule 403 is we just think the district court should tell us what was in its head, and we think that's what this court did in Castillo. We think that's what this court should do here, and then, when we know, we can have the discussion. What's the difference between this limited, full remand request? So I mean, as I understand, I don't know if anybody remembers post-Booker, when everybody wanted a resentencing based on Booker. I don't know the case from the Tenth Circuit. I was in the Seventh Circuit at the time, but they were called Palladino remands, where this, where they, well it was the Seventh, they would just ask the district court, do you want to resentence this person? And if the answer was yes, they'd send it back. If the answer was no, so it would be something like that. I mean, we just need. Like, we would request an indicative ruling from the district court?  Yes. Okay. Can I ask you another question about the evidence, the evidentiary arguments, and it's a very basic one. You know, in your brief, you talk about these 807 challenges and so on relate to this uncharged conduct, right?  And we're talking about sexual abuse evidence, uncharged conduct. Are we talking exclusively about MV3's forensic interview statements? Is there anything else, or is it just MV3's forensic interview statements? That's it? That's it. Okay. It came in, so it came in twice. Right. It's a little confusing, so the back, yes. The background, and then the, yeah, so it came in, but we're not talking about some other body of uncharged conduct evidence, right? Okay. That's right. Yes. Sorry to interrupt your train there. No, that's fine. Yeah. We're on my issue, and you actually answered my question about your position on 403. Okay. I mean, I don't know if I have any great insight on the other issues. I mean, I think it's very straightforward. I think McFadden is great for us on Rule 807. I think this is an obvious abuse of discretion. Our facts are very similar. I think our facts are better because in McFadden, it was actually the charged offense conduct. This isn't even the charged offense conduct. And then on the background, you know, Hinson and Capps are really good for us. I think they, you know, that was also a clear abuse of discretion. So I think we're in pretty good shape there. I don't really have much else on the evidentiary issues. Let me ask you one thing about it first. Okay. It sounds like Judge Rossman has something else too. Okay. Is your beef on Rule 807 that she, or part of your beef, that she started to testify about all of this background and got a lot of it out before she sort of quit wanting to answer questions? And is your position that, look, they already talked about that? She got most of it out. Ergo, it wasn't a proper situation to allow this report to come in? I mean, I don't even know that she didn't want to, I mean, I think she testified that he did what he did and that was the evidence that was probative on what, I don't even know what it's probative on. It's not part of the offense conduct. But getting her, you know, what McFadden says is that Rule 807 is in the general catch-all provision and you can't just use it if there is tepid trial testimony. Yeah, no, fair enough. And that's what I'm getting at. Yeah. I mean, she did at the end sort of start giving the, I don't remember, I don't really want to talk about that answers. I mean, I don't, I didn't read the record that way and if that's what, I mean, it's still, again, it's uncharged conduct. She testified that he abused her. I mean, there's no, there's no other reason to do this other than it's prejudicial. Well, there were, there were things, I mean, maybe you're right, but maybe not. There were things in there like she identified the phone that he was using and, you know, some of her, some of her statements corroborated what was going on, at least for the government's theory in the videos. I mean, Judge Carson, you have to remember that Rule 807 says it has to be more probative than other evidence. They found the phone on him. I mean, it's, they don't need. No, I, I, I, I, fair, fair enough, but I mean, those are things. I mean, it's fine, but it's still, it's just not more probative than the evidence the government had in introducing the trial. And I guess your, your, your thought on whether it corroborates the videos or sort of the videos are speaking for themselves. Yeah, exactly. Yeah. I don't know. I don't know how it's more probative than anything the government did at trial. So considering that they found the phone on him, that the videos were pretty explicit and telling, how's, how's there any harm from that? So I think harm for us, we hope that there are more than one errors and that you will do a community analysis, which would help specifically on her, her test, her statements, her out-of-court statements. Look, I get that she testified and that's a problem. McFadden recognizes that's a problem. I'll say one thing on that is that if, if, if you're a district court judge and you don't want reversed, you always let this stuff in under rule 807 because the court's either going to say it's not an abuse of discretion or it's harmless because there was testimony and it didn't matter. It's like this catch-22. It's just, it's frustrating. But putting that aside, I think on harmlessness, it's just the nature of the evidence and just beating the jury over the head with it. And it's, it's not why we were at trial. I mean, that's, that's my pitch. Right. No, fair, fair enough. And it sounds to me, tell me if this is a fair statement. If this was your only, if this was the only harm you were bringing to us today, you probably, you would probably be hard pressed to say that it's a, it's reversible, but tacked on to the other stuff, we're starting to make a difference. I mean, I think that's fair. I will say, I mean, this, you know, I'm not asking you to concede it. I'm just, I do think the difference between McFadden in this case is that it is uncharged conduct. I mean, that, that's, that's the only distinction because McFadden makes, you know, I think McFadden is great for us and it does talk about how it's harmless or they're, yeah. So the difference is this is uncharged, it was charged there, but I get, I, I don't disagree with what you're saying. Okay. It's definitely helpful to have more than one error. Okay. So I'm sort of fascinated by issues two and five. I don't know if anybody else is. I'm already down to six minutes. I do want to talk about multiplicity and the forfeiture waiver. And I, hopefully this argument makes sense because I think this is actually a very important argument on when you have to raise a multiplicity challenge. And I know that there is the line of precedent about Rule 12B and good cause. But the rule says if the, quote, if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits. And I just, hopefully our position, I know we don't have many words, hopefully our position is, is clear that there is no prohibition against simultaneous prosecutions. It is a success, it is the convictions that matter. So this, in fact, was not something that could have been raised pretrial. I hope, I hope that's clear. I think that's right. And obviously you have a case. Can you say more about that? I'm not, I'm not really following your argument. So, so, if, so the, the government's position is that there's, that this isn't properly before us, right? Yes. Okay. And, and plain error review doesn't even apply. Correct. Okay. And so what is your response to all of that? So our response is the language I just quoted from the rule says that you don't have to raise something pretrial if it can't be determined without a trial. And what I'm saying is that multiplicity is not fatal to an indictment. That's black letter law. What, what is, what double jeopardy precludes are two things, successive prosecutions and multiple punishments. And so he can be tried on a multiplicitous indictment and the jury could even convict on both. It is at that point that you get the remedy, which is vacating one of the convictions. Do you have any cases that support that view? That that support the, your reading of the rule in, in the way that you've just described? Well, I mean, I have binding precedent from this court that says plain error review applies. It doesn't say what I just said, but it's still binding precedent from this court. And it predates the amendments? Uh, that might be true. That might be true. Are you talking about McCullough? Yes. Yes. Um, but I don't think it matters that it predates the amendment because of what I just said, that it's black letter law, that you can literally be convicted on a multiplicitous indictment. Well, I mean, I would agree with you. Our cases aren't crystal clear on this. Yes. Post, post amendment. Yeah. Um, I, I did want to talk about that, uh, you know, obviously the case we rely on in Ash is Ash. I think you just have to read that opinion. I do, I do think that a few things I want to highlight about Ash that maybe didn't come out fully in the briefing, but the discussion at the end of Ash about whether the, the conduct happened simultaneously, I think that's super important because it did here. And what Ash says is that that matters. Uh, there's also a paragraph in Ash because the government's just focusing on the first, this phrase, um, each use of a minor and ignoring what comes after it to create a visual, visual depiction. And we're focusing on the latter. So this kind of debate, there is a paragraph in Ash where this court actually emphasizes the language we're relying on, uh, any, uh, visual depiction. It's literally in italics. I think that matters. Uh, I also think it matters that the court talks about how the harm of 2051 was about, uh, preventing pornographic materials. And the fact that this, the depiction is the reason why we're in federal court. Without the depiction, we're not in federal court. And that's why, that's another reason why we think we're right on the unit of prosecution is plain under Ash, uh, and those counts go away. And like I said, I mean, the fact that a few counts go away is not the ballgame for the government. Uh, issue two is a sort of a, well, I don't know. I guess I should reserve time for, but let me just say, and we're, we're a little bit ahead of schedule. So let's, uh, I'll be lenient with you here because I want to ask you about, so just, just to button that one up, your position is, is look, the unit of prosecution is the  We're talking about each depiction, um, as opposed to each use. You don't necessarily dispute that there was a separate use for each kid in the depiction. Uh, I think I'm okay with that. Okay. I, yeah, I mean, these, these things come up without a chance for reflection. Um, but okay. So I, I mean, there's two kids in the video, right? Yeah. Yeah. And so, I mean, how would you, I was just thinking of, you know, just as we sit here, I was just thinking in my head about the, that sort of the child, uh, sexual assault cases that happen on the reservation sometimes that we get and where, where there are three charges of assault because when someone lays down with the child and reaches over them, they touch the breast and then they touch their rear end and then they touch, um, in another part. So, and then it's three charges that you see. And there's at least some authority for that being okay. How does this one differ from that? So I think the difference is that you're getting cases in that context that are generally just state cases that are coming in under the Major Crimes Act or the, and, and then that the, the distinction I was just making was that under 2051, you need the depiction to be in federal court. Right. And so that's the distinction I would draw there. Okay. All right. Fair enough. Um, Judge Rossman? Too many questions. Okay. Judge Kelly? Nothing. Thank you. Okay. We're going to give you some rebuttals, so. Okay. Appreciate it. Next we have Brian Clark. Good morning, your honors. Brian Clark for the United States. May it please the court. Mr. Morgan's convictions on all 10 counts of child sexual exploitation should be affirmed. Now I'll jump right in, Judge Carson, to your initial questions about Rule 403. Mr. Hansmeier referred to and relies on, almost exclusively, the Castillo case. The Castillo case was a Rule 414 case. And in this court's decision in Piette, this court said that the more rigorous explanation standard that applies to Rule 414 evidence does not apply to evidence that is also admitted as res geste. All of the evidence that Mr. Morgan challenges the admission of here was admitted as res geste, as well as under Rule 414. And so our submission- I'm not sure he concedes that it's properly admitted under res geste. Well- I think that's contested, isn't it? Not on appeal as I read the opening brief. And I would point you to page 47, footnote five, of the opening brief. That's where Mr. Morgan addresses the evidence that came in, his background. He made very clear there that his argument was about hearsay and not about res geste, not about relevance, not about Rule 414. Now, in reply, he does come back and try to say, well, my hearsay argument is effectively the same as a res geste argument, and that's incorrect also because res geste, of course, deals with the relationship between the conduct and the offense conduct, the prior conduct and the offense conduct, whereas hearsay has to do, well, at least in the background context, whether the statements that came in were necessary to give the jury context. So hearsay and res geste are two separate concepts that Mr. Morgan, in reply, tries to conflate in order to, I think, sort of salvage his Rule 403 argument. Okay, assuming what you say is true, is your position that if this were a 414 case and we were trying to decide whether you could have harmless error with respect to a 403 determination, maybe, maybe not, but that in this case, since you don't have the heightened burden required by 414, that absolutely harmless error would apply? So I do think harmless- Or maybe it's stronger. Yeah, so I do think harmless error applies, but I would be more specific than that, and I would point you to this court's decision in Silva, and then this court in Piette applied that decision. In Silva, what this court said was the district court does not have to give a reasoned explanation of why the probative value isn't outweighed by the prejudicial value. As long as the record supports the district court's conclusion, that's sufficient. And this court, and Silva is a great example of this, Piette is also, this court, I think, pretty regularly digs through the record to see if a Rule 403 decision is supported by the record. But I would hasten to note also that Mr. Morgan is not challenging the district court's conclusion with respect to Rule 403 here. He's only challenging, and only kind of, the reasoning. And when you take a step back and say that the district court under Silva wasn't required to engage in this, or to provide the more fulsome explanation that Mr. Morgan is insisting on, given that the district court wasn't required to do that, Mr. Morgan's Rule 403 argument really collapses. And moving on to the Rule 807 issue, unless there are further questions on Rule 403, Mr. Hansmeier emphasized that the evidence that was admitted under Rule 807, and specifically MV3's forensic interview statements, related to uncharged conduct. I agree with that, but Rule 807 is agnostic with respect to whether the evidence related to charged or uncharged conduct. Does McFadden make that clear? No, I don't think so. I mean, McFadden and also Burgess, both of those cases did involve prior out-of-court statements, so hearsay statements that related to charged conduct, but it didn't make any distinction between charged or uncharged conduct. It didn't make that part of its reasoning. I think Mr. Morgan is just trying to sort of tease that out just because those were the facts of that case. But all Rule 807 says is when hearsay is more probative on the point for which it is offered than other evidence that the proponent could obtain through reasonable means, then it can be admitted under Rule 807. It doesn't make any distinction between whether the conduct was charged or uncharged. There are other rules that deal with what is the probative value or what is the point, and that is Rule 803. But again, Mr. Morgan's Rule 803 argument really doesn't challenge the conclusion, and his argument with respect to insufficient reasoning, again, falls apart under Silva and Piette. So Rule 807, I would just reiterate, does not make this distinction between charged or uncharged conduct. And I would just- So would you agree that if MV3 had testified fully as to what was in the report, that it would have been an abuse of discretion to admit it? Yes, I believe so, because under Burgess and McFadden, if the witness is able to testify as to everything, then that is the most probative evidence on the point. Right, and so are we now, because of this testimony, sort of in a line-drawing position because this witness didn't testify to everything, but she testified to a lot of it? Well, I guess I would push back slightly on the premise of the question, that she was able to testify to a lot of it. I mean, she said a number of things that were very sort of equivocal. She was asked if Mr. Morgan touched her in a way she didn't like. She said yes. She was asked, well, how did he touch you? And she said, either I forget or I don't want to talk about that. So she didn't give specifics as to that. The prosecutor did later follow up and ask a question along the lines of, did he use his mouth? And she, again, either said I forget or I don't want to talk about that. I can't remember exactly. She was asked if Mr. Morgan took pictures of her, and she said that he did, but that she couldn't remember what the pictures were of. Of course, that's an important and very salient and probative fact, right? Because her forensic interview statement was that Mr. Morgan took pictures of MV1's genitals, showed that picture to her, tried to take pictures of MV3's genitals. That's an important fact. And she did testify that Mr. Morgan touched MV1, and I think the quote is, you know, I feel like everywhere when MV1- I mean, how much background do you need? I mean, it- So this was, so respectfully, this is not background. This is evidence that goes to prove Mr. Morgan's intent, and the intent comes into play in at least two ways. There were- I mean, what intent do you need? He took the videos. He doesn't, I mean, you got the videos off of his phone. He had the camera in his house. Right, and all along and all throughout this case, he has argued that his conduct was merely voyeuristic, and I would respectfully submit that it absolutely was not, and part of the evidence that showed what his intent was was MV3's forensic interview statements, not just that he touched her in a way she didn't like, but that he touched her genitals every time she went to his house, touched inside her genitals, licked her genitals every time she went to his house. That is a big difference. How is that probative on whether he was producing pornography as opposed to just being voyeuristic? Well, because with respect to the attempt charges, the government had to show that Mr. Morgan intended to produce child pornography, even if the ultimate depictions were not necessarily lascivious exhibitions, and so the intent, that evidence goes to show his intent, what he wanted to get out of, you know, putting a camera up MV2's nightshirt or filming kids naked in his bathtub, and I would point this court's decision in Wells, which relied on this very type of sexual abuse evidence to support its conclusion that the depictions in that case were lascivious exhibitions, and so the evidence, the sexual abuse evidence is part and parcel of the depictions he produced of setting up the camera and all the rest, but it also provides very important, I think, probative specifics as to his sexual interest in children and what he was trying to get out of those depictions that he made that, you know, were more probative than just the videos themselves and were more probative than the equivocal and incomplete and I think inconsistent testimony that MV3 was able to give in court, and so I think that it was, you know, proper under Rule 807 because it was more probative on that point. What do you think about, do you, I was gonna move on to multiplicity. Okay. Okay. So we have Judge Briscoe's whole case, which the name escapes me, and we have Mr. Hansmeier's Rule 12b argument on multiplicity. I mean, what's your take on the multiplicity? My take on the multiplicity is that multiplicity occurs or doesn't when the charges are brought. That is very clear in this court's case law. Esch says that itself, that multiplicity happens when a defendant is charged with multiple counts for a single offense. Now, I take Mr. Morgan's point that multiplicity is closely related to double jeopardy, but multiplicity is a problem in and of itself, and it's a problem that the rules say must be addressed before trial when it can be, and it could have been addressed before trial here, and I guess I- Do you agree that that's, I mean, that's what the language of the rule says, so that's what it says, and so as applied here, the government's contention is it could have been addressed, and so why is that? Why it could have been addressed before trial because before trial, Mr. Morgan knew that the government had charged the case as it had. More specifically, Mr. Morgan knew that, for example, he was charged with two counts for a single video because there were two minor victims in it, and we run through each of the counts. In our response brief, and point the court to the record where, you know, based on the complaint that was initially filed, based on pretrial briefing, et cetera, there was plenty in the record that put Mr. Morgan on notice. This is how we're charging this case. There's a single video, there's two victims, you've got two charges for that. There's a single video, there's three victims, you've got three charges for that, and just because the case could proceed, you know, to trial on those multiplicitous charges under the Double Jeopardy Clause does not relieve Mr. Morgan of his obligation under the rule and I guess just to put a very fine point on it, what Mr. Morgan is asking this court to do is to basically say that the multiplicity component of Rule 12 is a dead letter because any defendant, you know, could, you know, sit on the argument and wait until appeal to bring the argument or wait until the end of trial and Rule 12 is meaningless there and this court has been very stringent about its application of Rule 12 and I would point the panel to the Boline case where it said, you know, plain error review doesn't apply until a defendant can show good cause under Rule 12. Now, I agree that that's not a multiplicity case but it shows just how seriously this court takes Rule 12 and I think rightly so. With respect to the Judge Briscoe decision, I think you're referring to McCullough. As you pointed out, Judge Rossman, that was pre-2014 amendments but I think there's a more important point to draw from McCullough, which is that it has nothing to do with Rule 12. The government didn't raise a Rule 12 objection or argument there. It just was not part of that case at all. The court didn't address it and so sure, it applied plain error but this court routinely says that issues lurking in the background aren't resolved by a decision that doesn't address them and so that's the point that I would make with respect to McCullough. Can I ask you a question about something we haven't discussed yet and that's during Instruction 11? Sure. And so this is the, the contention here is that it misstates the law because it sort of conflates general and specific intent. Does the government agree that it's just on its face doctrinally just incorrect? I disagree with that and the reason comes from a different place in the instruction. So I would point you to page 287 of Volume 1 of the Record on Appeal. That is where the instruction specifically says that in order to convict of attempt, the government has to prove beyond a reasonable doubt that the defendant intended to commit the crime and so when you read the provision that you were referring to, Judge Rossman, in light of that definition of what attempt means, it clears up any issue that there would be regarding whether general as opposed to specific intent is required. So your position is that reading it together wouldn't mislead the jury so this is an argument the government, if I understand your position, contends we can resolve on error, not harmlessness? That's right, yes. Yes. And in addition to that, I would echo what the district court judge said which is that, you know, anytime someone knowingly attempts something, how could you do that without intending to do so? I think that supports our argument. I think my first line argument though would be the language that follows on the following page of the instruction, page 287. I see that I am out of time. If I may make one final point with the court's indulgence regarding the background testimony which I haven't had a chance to address yet. Go ahead. Okay, I'll do it quickly. And I would just note that with respect to the background testimony, Mr. Hansmeier mentioned that the Hinson and Capps cases are strong for them which is interesting because those cases were not cited at all in the very extensive pretrial briefing that occurred in this case. And the reason is because the argument that he makes on appeal with respect to the background testimony is different than the argument that was made below. He makes a hearsay argument on appeal with respect to the background testimony but below the arguments were all about res geste, 414 and the like. There was no hearsay objection at trial. Defense counsel did not raise this issue and it's raised for the first time on appeal. And in response to our brief which noted that Mr. Morgan has not argued plain error. So that argument I think should be deemed waived. Thank you, counsel. Thank you. Let's give Mr. Hansmeier three minutes. Thank you. All right, I think I have four points. Just on the multiplicity, just to be very clear, the language in the rule includes this language. The motion can be determined without a trial on the merits. That's why I'm right, the government's wrong because this issue could not be determined without a trial on the merits. Full stop. If he's not convicted of multiplicity discounts, there is no multiplicity problem. Just period. Couldn't the district court look at that in a pretrial motion and say, wow, I'm looking at this and under the statute. In the end, only one of these can go forward anyway as a matter of law. So I'm just, I'm striking count two or one of them. I don't think so. I don't think that, not in this. And I will say that it's not a dead letter because you could have a purely multiplicity, you could have two counts that are purely multiplicities. If the government literally charges the same offense in two counts with no sort of distinction, here they charge different victims. So the question becomes, okay, is the jury gonna buy both? And if they do, then you have to vacate one of the convictions on the back end. It's not a dead letter because there could be a purely, there could be two purely multiplicity discounts. And this whole discussion about res geste and we were arguing something new and it's hearsay blows my mind. I don't get it. The whole res geste thing, that word makes, I don't know why, my opening brief didn't use that word because I don't know what it means and I don't think any of us do. The bottom line is, this was a, the debate below was about whether this was proper background evidence, full stop. And it wasn't just hearsay. The government was trying to get in a bunch of other stuff. So the fact that we're not, we're just talking about statements on appeal doesn't turn what was an argument about whether this is necessary to prove context into a hearsay argument. It's the same argument. There's no difference. It's just the fact that by admitting the non-hearsay, it becomes hearsay. Okay, that's fine, that's a product of my argument. But the argument is identical. And we don't have to cite cases in the district court. The attorney made clear that this was unnecessary. The government didn't need it. That's enough to preserve it. And the cases are on point, so that's that. On the specific intent instruction, I guess this will be my last point. The idea that a general instruction is somehow maybe correct, then the specific elements instruction is wrong. I mean, that is the inverse of Bedford, which the government cites. I get that if a specific elements instruction is correct and a general instruction is maybe wrong, you probably don't have a problem. But you flip that on its head, no jury's gonna say, I'm gonna ignore the specific instruction and rely on this general instruction. I don't buy it. I don't think you should either. Okay. Thank you, Counselor. You're out of time. I appreciate it. I did just want to comment with both of you. I think Judge Rossman and I on various panels have had both of you in court recently. And the arguments are always really good and helpful. And I just want to tell you guys that we appreciate it. That case will be submitted and Counselor, excuse me.